IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BAD RHINO GAMES, LLC,

        Plaintiff,

v.                                                                          Case No.  23-2303-JWB

TURN ME UP GAMES, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Bad Rhino Games' motion to dismiss Turn Me Up Games' counterclaim. (Doc. 12.) The motion is fully briefed and ripe for decision. (Docs. 13, 27, 30.) The motion is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

**I.**    **Facts**

The facts set forth herein are taken from the allegations in the counterclaim. Turn Me Up Games, Inc. ("TMU") is a video game developer based in Los Angeles, California. In late summer and fall of 2021, TMU engaged in discussions with Digital Extremes Ltd ("DEX"), a video game developer and publisher, regarding the development of an online game (the "game"). (Doc. 22 at 14.) On November 4, 2021, TMU and DEX entered into an agreement under which TMU agreed to port the game being developed by Airship Syndicate Entertainment ("Airship Syndicate") into another software format. TMU then entered into an independent contractor agreement ("ICA") with Bad Rhino Games ("Bad Rhino") under which Bad Rhino was to provide development services in connection with porting the interactive entertainment software for the game. (*Id.* at 15.) The ICA identifies DEX as the game developer and publisher. Further, the ICA has a non-compete provision. That provision states as follows:

1

> By signing this agreement, BAD RHINO understands that TMU has invested considerable time and money into developing the relationship it has with its publishing partners.
>
> As such, for the duration of this agreement and for sixty (60) months after end of this agreement, for whatever reason, BAD RHINO agrees to not engage in any business with the publisher of the Game with which TMU has signed an agreement.
>
> The parties hereto hereby acknowledge and agree that (i) TMU would be irreparably injured in the event of a breach by BAD RHINO of any of its obligations under this Section 13, (ii) monetary damages would not be an adequate remedy for any such breach, and (iii) TMU shall be entitled to injunctive relief, in addition to any other remedy which it may have, in the event of any such breach.

(Doc. 22-2 at § 13.)

On February 1, 2022, DEX and TMU entered into another agreement (the "DEX Co-Dev Agreement") related to the game which expanded the services TMU agreed to provide under the initial agreement. That same day, TMU and Bad Rhino entered into a Master Services Agreement ("the MSA") under which Bad Rhino agreed to provide additional development resources to TMU so that TMU could fulfill its obligations under the new agreement with DEX. (Doc. 22 at 16.) On or about April 1, 2022, TMU and Airship Syndicate entered into a development agreement under which TMU agreed to provide services related to the game to Airship Syndicate. Based on all of the agreements, TMU reasonably expected to make at least $1.8 million for its services to DEX and Airship Syndicate. (*Id.*) Bad Rhino knew that TMU had signed agreements with both DEX and Airship Syndicate. (*Id.* at 18.)

On August 1, 2022, DEX terminated the DEX Co-Dev Agreement without explanation. TMU later learned that Bad Rhino was responsible for the termination of that agreement and that Bad Rhino contracted directly with DEX and/or Airship Syndicate to provide services for the game. (*Id.* at 17.)

On July 7, 2023, Bad Rhino filed this action against TMU alleging that TMU had failed to pay amounts due under the ICA. (Doc. 1.) TMU filed a counterclaim against Bad Rhino alleging the following claims: 1) breach of contract; 2) breach of duty of good faith and fair dealing; 3) tortious interference with contract; and 4) tortious interference with prospective business relationship. (Doc. 22.) Bad Rhino moves to dismiss TMU's counterclaims.

## II.     Standard

Motion to Dismiss. In order to withstand a motion to dismiss under Rule 12(b)(6), the counterclaim must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to TMU. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Choice of Law. "[A] federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting." *Ace Prop. & Cas. Ins. Co. v. Superior Boiler Works, Inc.*, 504 F. Supp. 2d 1154, 1158 (D. Kan. 2007). Because this court is in Kansas, it applies Kansas choice of law provisions. With respect to contractual disputes, Kansas courts apply the choice of law rule known as lex loci contractus, or "the law of the state where the contract is made." *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (applying Kansas law). Here, Bad Rhino alleged that the ICA was entered into with Bad Rhino, a Kansas company, to be performed in

Kansas, and the parties agree that Kansas law applies to this action. (Docs. 13, 27.) Therefore, the court will apply Kansas law.[1]

**III.  Analysis**

    **A.  Breach of Contract**

Bad Rhino moves for dismissal of the breach of contract claim on the basis that TMU cannot show a breach of the ICA and, alternatively, TMU is precluded from recovering damages under the ICA. To state a claim for breach of contract under Kansas law, TMU must show: (1) the existence of a contract; (2) sufficient consideration; (3) TMU's performance or willingness to perform; (4) Bad Rhino's breach of the contract; and (5) damages to TMU caused by the breach. *Stechschulte v. Jennings*, 297 Kan. 2, 23, 298 P.3d 1083, 1098 (2013). At this stage, Bad Rhino only challenges the last two elements. With respect to the allegation of breach, Bad Rhino asserts that it did not breach the non-compete provision because it did not enter into a contract with DEX. In support of this position, Bad Rhino has attached a declaration from Ryan Manning, the owner of Bad Rhino, stating that Bad Rhino has not entered into a contract with DEX. (Doc. 13-1 at 3.) The court does not consider declarations when ruling on a motion to dismiss unless they are attached to the complaint or counterclaim. *Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1150 (D. Kan. 2006). Bad Rhino also argues that TMU's allegations are insufficient to

---

[1] Although not raised by the parties, the ICA contains a provision identifying Ontario, Canada as the law that governs the agreement. (Doc. 31 ¶ 12(c).) Kansas courts will generally apply the law chosen by the parties in a choice of law provision in a contract. *Brenner v. Oppenheimer & Co. Inc.*, 273 Kan. 525, 539, 44 P.3d 364, 375 (2002). Neither party argues that Canada law should apply to this matter. Further, based on the parties' United States citizenship, the application of Canada law in the ICA is perplexing. After review of DEX's agreement with TMG, it appears that TMG may have utilized the language from that agreement in the ICA. (*Compare* Doc. 22-1 ¶ 12(c) *with* Doc. 31 ¶ 12(c).) DEX is a Canada company. (*Id.* at 1.) Because neither party has asserted that Canada law should apply and the court sees no reasonable basis for Canada law to apply here, the court will apply Kansas law in resolving this motion. *See Altrutech, Inc. v. Hooper Holmes, Inc.*, 6 F. Supp. 2d 1269, 1273 (D. Kan. 1998) (discussing that "the enforceability of a contractual choice-of-law provision turns on whether the forum selected bears a reasonable relation to the contract at issue.").

establish a breach and that TMU has failed to put forth evidence of an agreement between Bad Rhino and DEX.  Reviewing the non-compete provision, Bad Rhino is precluded from engaging in any business with the publisher of the game.  The parties do not dispute that DEX is the publisher of the game.  The allegations in the counterclaim state that Bad Rhino went behind TMU's back, caused the termination of TMU's agreement with DEX, and Bad Rhino contracted directly with DEX "and/or" Airship Syndicate to provide services in the game.  (Doc. 22 at 17.)  Bad Rhino argues these allegations are not sufficient because they can be read to conclude that it contracted only with Airship Syndicate.  The court disagrees.  A motion to dismiss for failure to state a claim should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).  Here, one set of facts in the counterclaim contends that Bad Rhino contracted with DEX.  Further, TMU's response brief indicates that it believes it can prove this allegation.  Therefore, the court finds that the allegations sufficiently allege that Bad Rhino breached the ICA.

Next, Bad Rhino argues that TMU cannot recover any damages on its claim of breach of contract due to the limitation of liability provision in the agreement.  The provision at issue states,

> Neither Party hereto shall be liable to the other for any incidental, consequential, special or punitive damages of any nature or kind, arising out of or in connection with a breach by such Party of this Agreement, whether such liability is asserted based on contract, tort (including negligence or strict liability), or otherwise, even if such Party has been warned of the possibility of any such loss or damage.

(Doc. 31 § 12(b).)

Bad Rhino argues that this provision would preclude TMU from recovering lost profits because they are consequential damages.  Reviewing the allegations, TMU asserts that it lost $1.8 million that it would have been paid but for Bad Rhino's breach of the non-compete provision.

5

(Doc. 22 at 16.)   The Tenth Circuit has explained that lost profits can be both direct and consequential damages.  *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007).  When a party is seeking to recover lost profits that were lost from the breach of the contract itself, those are direct damages.  *Id.*  Consequential lost profit damages would include lost profits that came about due to the company having to close its doors or profits that were indirect from the breach.  *Id.*  Bad Rhino argues that these profits are consequential damages because they do not flow directly from the contract between it and TMU.  While these damages cannot be quantified from the terms of the ICA regarding the work to be performed by Bad Rhino, it is plausible that TMU could prove that these damages were a direct result of the breach of the non-compete provision.  *See Accountable Health Sols., LLC v. Wellness Corp. Sols.*, LLC, 333 F. Supp. 3d 1133, 1155 (D. Kan. 2018) (citing *eCommerce Indus., Inc. v. MWA Intel., Inc.*, No. CV 7471-VCP, 2013 WL 5621678, at *47 (Del. Ch. Sept. 30, 2013)).  Based on the allegations and at this stage of the proceedings, the court finds that TMU has sufficiently alleged damages for lost profits that it would have obtained under the agreement with DEX that was terminated as a direct result of Bad Rhino's breach of the non-compete provision.  Under such circumstance, these lost profits are direct damages and not consequential damages.[2]  Therefore, they would not be precluded under the limitation of liability provision.

Bad Rhino's motion to dismiss the breach of contract claim is denied.

**B. Breach of Duty of Good Faith**

TMU also brings a claim for breach of the duty of good faith.  "Kansas law implies a duty of good faith in every contract."  *Cargill Meat Sols. Corp. v. Premium Beef Feeders, LLC*, 168 F. Supp. 3d 1334, 1345 (D. Kan. 2016).  This duty grows out of the contract obligations and "only

---

[2] This ruling does not preclude Bad Rhino from raising this issue on summary judgment.

amplifies duties and rights already existing under the terms of the agreement." *Id.* (citing *Pizza Mgmt., Inc. v. Pizza Hut, Inc*., 737 F. Supp. 1154, 1179 (D. Kan. 1990)). To prevail on this claim, Plaintiffs must "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term." *Terra Venture, Inc. v. JDN Real Est. Overland Park*, L.P., 443 F.3d 1240, 1244 (10th Cir. 2006) (quoting *Wayman v. Amoco Oil Co*., 923 F. Supp. 1322, 1359 (D. Kan. 1996) (internal quotations omitted).

Here, TMU has pled a claim of breach of contract with respect to the breach of the non-compete provision. TMU further alleges that Bad Rhino failed to abide by the terms in good faith by intentionally and purposely interfering with TMU's relationship with DEX and injuring TMU's right to receive the fruits of the agreements. Bad Rhino moves to dismiss this claim on the same grounds that it raised with respect to the breach of contract claim and further argues that TMU is merely repackaging its breach of contract claim. (Doc. 13 at 13.) As stated previously, breach of the duty of good faith and fair dealing is not a separate cause of action. Rather, it is just another theory of breach of contract. Therefore, to the extent TMU has pleaded a separate claim for breach of the duty of good faith, it is dismissed; however, this ruling does not preclude TMU from including a breach of the duty of good faith as an alternative theory under Count 1.

### C. Tortious Interference with Contract

TMU has asserted a claim for tortious interference with a contract against Bad Rhino for interfering with the DEX Co-Dev Agreement. Bad Rhino moves to dismiss this claim on the basis that TMU has failed to allege that Bad Rhino's conduct resulted in a breach of the DEX Co-Dev agreement. (Doc. 13 at 14.) To prove this claim, TMU must show the following: (1) a contract with DEX; (2) Bad Rhino's knowledge of that contract; (3) Bad Rhino's intentional procurement

of its breach; (4) lack of justification; and (5) damages. *Snyder v. Am. Kennel Club*, 661 F. Supp. 2d 1219, 1236 (D. Kan. 2009), *aff'd*, 402 F. App'x 397 (10th Cir. 2010) (quoting *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 168–69, 872 P.2d 252 (1994)). Reviewing the allegations, TMU has alleged that Bad Rhino's conduct caused the "termination" of the agreement between TMU and DEX. (Doc. 22 at 20.) TMU argues in its brief that its allegation of termination is sufficient to state a claim. (Doc. 27 at 11.) TMU does not allege that the termination was not in accordance with the terms of the contract which provide that DEX may terminate the agreement without cause. (Doc. 22-1 ¶6(b).)

To prevail on this claim, TMU must show that Bad Rhino procured the **breach** of TMU's contract with DEX. *See Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1040 (D. Kan. 2018) ("this most basic element of breach must be alleged to state a claim for tortious interference with contract.") (citation omitted). TMU has not alleged that Bad Rhino caused DEX to breach its agreement and TMU does not assert in its response brief that there was a breach of that agreement. Therefore, TMU has failed to plausibly allege a claim of tortious interference with contract. *See Babbar v. Ebadi*, 36 F. Supp. 2d 1269, 1275 (D. Kan. 1998), *aff'd*, 216 F.3d 1086 (10th Cir. 2000). Bad Rhino's motion to dismiss this claim is granted.

### D. Tortious Interference with Business Relations

Finally, TMU has also asserted a claim of tortious interference with business relations. This requires TMU to prove the following: (1) the existence of a business relationship or expectancy with the probability of future economic benefit to TMU; (2) Bad Rhino's knowledge of that relationship or expectancy; (3) a reasonable certainty that TMU would have continued the relationship or realized the expectancy but for Bad Rhino's conduct; (4) intentional misconduct by Bad Rhino; and (5) damages. *Stead v. Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan.*, 92 F.

Supp. 3d 1088, 1111 (D. Kan. 2015). Bad Rhino asserts that this claim fails because TMU has not alleged any misconduct.

Here, TMU has alleged that Bad Rhino knew of its relationship with both DEX and Airship Syndicate. Further, Bad Rhino had contractually agreed not to compete against TMU by engaging in a business relationship with DEX. According to the allegations, Bad Rhino violated this provision and has been engaged in business dealings with both DEX and Airship Syndicate which has resulted in the disruption of TMU's business with both third parties. Besides generally alleging that Bad Rhino intentionally breached the non-compete provision, Bad Rhino fails to allege any additional facts regarding intentional misconduct. Intentional misconduct includes acting maliciously or improperly. *Int'l Forest Prod., L.L.C. v. AAR Mfg., Inc.*, 618 F. Supp. 3d 1168, 1176 (D. Kan. 2022). The only alleged misconduct is a breach of the non-compete provision. This is not sufficient to show intentional misconduct. *See id.* (holding that an allegation of a breach of contract does not adequately plead this element without any facts regarding malicious motivation). Further, although a party may plead both a claim for breach of contract and an independent tort when the conduct satisfies the elements of those claims, a party may not do so when the contract imposes the same duties as the tort. *Accountable Health Sols., LLC v. Wellness Corp. Sols.*, LLC, No. 16-2494-DDC-TJJ, 2017 WL 6039537, at *12 (D. Kan. Dec. 6, 2017) *(*citing *Burcham v. Unison Bancorp, Inc.,* 276 Kan. 393, 414, 77 P.3d 130, 146 (2003)); *see also Swimwear Sol., Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1032–33 (D. Kan. 2018). Here, the contract, which neither party argues is unenforceable, prohibits Bad Rhino from interfering with TMU's business relationships with the publisher. In the absence of this provision, Bad Rhino would be free to lawfully compete with TMU, including by competing for DEX's business. If the only thing that precludes Bad Rhino from such competition is the non-compete provision in the contract, then

such competition would not be independently tortious. In other words, the contractual violation cannot be the sole basis for the misconduct element of this tort. Since TMU alleges no facts showing misconduct by Bad Rhino beyond violating the non-compete provision of the contract, TMU cannot proceed with this tort claim under Kansas law. *Id.* Therefore, Bad Rhino's motion to dismiss this claim is granted.

**IV.    Conclusion**

Bad Rhino's motion to dismiss TMU's counterclaims is GRANTED IN PART and DENIED IN PART. The motion to dismiss TMU's claim for tortious interference with contract and tortious interference with business expectancies is GRANTED. The motion to dismiss TMU's separate claim for breach of the duty of good faith is GRANTED. The motion is otherwise denied.

IT IS SO ORDERED. Dated this 25th day of October 2023.

                                               \_\_ \_s/ John Broomes_____
                                               JOHN W. BROOMES
                                               UNITED STATES DISTRICT JUDGE